### HODGES v. SIMPSON et al.

No. 10261—Opinion Filed Jan. 17, 1922.

Rehearing Denied March 27, 1923.

(Syllabus.)

1. **Vendor and Purchaser—Bona Fide Purchaser—Notice—Recorded Lease.**

Under section 1155, Revised Laws 1910, reading as follows: "Every conveyance of real property acknowledged or approved and certified and recorded as prescribed by law from the time it is filed with the register of deeds for recording, is constructive notice of the contents thereof to subsequent purchasers, mortgagees, or creditors," where a lessee takes a lease which is duly acknowledged and entitled to recordation and delivers the same to the recorder of deeds in the county in which the land is situated, such lessee has done all the law requires of him, and if the instrument is not properly recorded and indexed or is incorrectly recorded, it is the fault of the officer whose duty it is to record it, and the lessee will not lose his rights under said instrument nor be made to suffer by the laches of the recorder. (Covington v. Fisher, 22 Okla. 207, 97 Pac. 615; Dabney v. Hathaway, 51 Okla. 658, 152 Pac. 77.)

2. **Same—Possession as Notice.**

A purchaser of land takes the same with notice of whatever rights or interests are owned by the one who is in possession of said land. (Wilkinson et al. v. Stone et al., 82 Okla. 296, 200 Pac. 196).

3. **Same—Contradictions in Record Exciting Inquiry.**

In recording an instrument and in recording that portion reciting how and when and in what manner the consideration shall be paid, where such recital shows the consideration to be $250 for a five-year term, or $50 per annum, being in contradiction of a preceding statement in the record showing the consideration to be $250 per annum, this constitutes such a contradiction and doubt as to the real consideration that one examining said record and claiming rights thereunder is required to inquire further and pursue additional investigation of the real consideration intended to be expressed in said record.

Error from District Court, Choctaw County; C. E. Dudley, Judge.

Action by Rose Hodges against Loyd Simpson and others to collect rents from farming land and for appointment of receiver to take charge of the crops and subject them to payment of rents. Court refused to appoint receiver, and plaintiff appeals. Affirmed.

Allyn Smith and Jordan & Burke, for plaintiff in error.

McDonald & Jones, for defendants in error.

ELTING, J. Opinion in this case was handed down on the 13th day of December, 1921. Petition for rehearing filed December 21, 1921. Rehearing granted January 9, 1922, and the writer of this opinion directed to write an opinion.

This action was commenced in the district court of Choctaw county, with Rose Hodges as plaintiff, against defendants Lloyd Simpson, C. E. Moseley, Clarence Spradling, and J. H. Garrett, to recover rents due for farming lands under a lease by plaintiff's grantor to the defendant Lloyd Simpson, and to have a receiver appointed to take charge of the rents pendente lite.

On the hearing of the application for appointment of the receiver the trial court denied the application and rendered a judgment against the plaintiff. The plaintiff excepted and perfected this appeal and appears here as plaintiff in error. The parties will be referred to as they appeared in the court below.

The judgment of the trial court was a denial of the receivership, and no determination of the right of the recovery of the rents was finally reached except as it arose incident to the application for receivership.

There is involved in this case this question: It appears from the record that the lands involved in this case were allotted to Vicey Joe, an Indian citizen, and that on the 14th day of July, 1917, she executed an agricultural lease for the term of five years to Lloyd Simpson, the first named defendant in this suit. This lease was carried, either by Simpson or someone for him, to the county clerk of Choctaw county, in which county said lands were located, and the same was filed for record on the 14th day of July, 1917, at three o'clock p. m., and duly recorded in Book 43 of Leases, at page 477. That is the certificate signed by the county clerk by a deputy. There is no question raised as to the form of the execution of the lease, nor is it contended that it is not in condition entitling it to recordation.

From the evidence, it appears that said lease was executed upon a printed form of lease. The printed form of the lease has printed on it this language:

"That the consideration of this lease contract to be paid by the lessee to the lessor, is $— per anuum, payable as follows, to wit:"

In the record the undisputed proofs show that the lease, as actually drawn, signed, and executed and presented to the county clerk of Choctaw county, and covering the portion designating the consideration and manner of payment, was as follows, to wit:

"That the consideration of this lease contract to be paid by the lessee to the lessor, is 250 and no hundredths dollars payable as follows, to wit:

"$25.00 cash in hand paid, receipt acknowledged; $25.00 on January 1, 1918; $50.00 on the first day of January thereafter until the whole amount is paid and during the term of this contract."

It will be noticed that this recital of the consideration embraces all of the printed portion of the printed form of the lease that we have heretofore detailed except that the phrase "per annum" is erased, and the balance describing and reciting the consideration is in writing. The recorder in recording said lease recorded it as it was in the original lease and as executed and acknowledged, and as we have heretofore recited it, except that in recording the lease the phrase "per annum" was left in and recorded as "$250.00 per annum."

To explain briefly why only the right of receivership was determined by the court, and not the whole issue tried and determined: It was due to the fact that Lloyd Simpson went into the army and overseas

shortly after the execution of the lease and was not served, and the case was not in a position that the trial of the merits could proceed, and it was sought to impound the proceeds of the rents by placing the same in charge of a receiver.

It is contended by the plaintiff below, plaintiff in error herein, she being a purchaser of the fee of this land from Vicey Joe after the taking of said lease and the recording of the same, that she had a right to rely upon the record and that she was only bound by the lease as shown by the record, and that her rights under the lease were such as were shown by the record, and that she was entitled to enforce against Lloyd Simpson and the terretenants, who are the other defendants, at a rental of $250 per annum as shown by the record, instead of $250 for the five-year term, or $50 per annum. And in support thereof she invoked the rule that Lloyd Simpson and those whose rights attached to the land under him and the lease were bound by the acts and negligence of the recorder in recording the lease in the manner in which it was recorded, and were estopped to contend that the consideration for the lease was $250 for the entire term, or $50 per year, and urged that she relied upon what the record showed, and that she was entitled to recover $250 per annum as provided in the record of the lease as made by the county clerk of Choctaw county.

Upon this contention the trial court held against the plaintiff below, plaintiff in error herein, and denied the application for receivership, and in this we think the trial court is correct.

An examination of the authorities shows there are two lines of authority bearing upon the question of the force and effect of filing and recording instruments under the recordation acts of the various states. One line of authority holds that where one has an instrument and it is in proper form, entitling it to be filed or recorded, and he has delivered the same to the recording officer, the holder of the instrument has performed all that the law requires of him, and that he is not responsible for, neither is he estopped by, any mistakes made by the recording officer in recording said instrument. There is another line of authority holding that the delivery of the instrument to the recording officer is not sufficient, and that the failure of the officer to properly perform his duties and correctly record the instrument can be attributed to the holder of the instrument and those claiming rights under him, and that a subsequent pur-

chaser has a right to rely upon the record as made.

We quote the following from the case of Mangold v. Barlow, 61 Miss. 593, 48 Am. Rep. 84:

"Shall the deed prevail, or the record of it? There is great contrariety of opinion upon this subject in other states. The decided weight of authority seems to be in favor of the view that the record may be relied on by a subsequent purchaser, and that he cannot be affected by a deed not truly recorded. After the most careful consideration, we range ourselves with the minority, and hold that a grantee fully acquits himself of all duty imposed by law when he lodges the instrument with the proper officer for record."

This court in two opinions has committed itself to the first holding elucidated above and aligns itself with the holding in the Mississippi case just quoted. The first case is the case of Covington v. Fisher, 22 Okla. 207, 97 Pac. 615, by Kane, J. This case involved the foreclosure of a real estate mortgage. In recording the mortgage the recorder made the mistake in recording the land as the southwest quarter, when it should have been the northwest quarter. This case is completely in point, and if upheld is decisive of the law involved in the instant case. In discussing the proposition in the cited case, the following language is used:

"The undisputed evidence shows that plaintiff's mortgage was correctly drawn to cover the 'northwest' quarter of section 9, township 18, range 11 west, situated in the county of Blaine, and that this mortgage was filed for record in the office of the register of deeds of Blaine county on the 11th day of December, 1902, and recorded in Book 9 of Mortgages, at page 69. In recording the mortgage the register of deeds made a mistake, and entered it in the record as the 'southwest' quarter, instead of the 'northwest' quarter of section 9, township 18, range 11 west, as it was correctly written in the instrument itself. The plaintiff presented and filed the mortgage for record, and it was correctly entered on the index in the office of the register of deeds as the 'northwest' quarter, and so appeared in all the books in which it was necessary to make an entry of it, except in recording it at length, when the above mistake occurred. The mortgage of the First National Bank covering the same land bears date of the 11th day of October, 1904, and was recorded in Book 13 of Mortgages, page 48, in the office of the register of deeds, on the 12th day of October, 1904.

"Counsel for the First National Bank complains because the court below admitted in evidence the indexes to the records of the register of deeds, and cites authorities to the effect that the indexing of a deed does not form an essential part of its record. We believe such indexes were admissible as tending to show the mistake of the register of deeds, and to show that the mortgage, so far as the mortgagee was concerned, was properly prepared and deposited for record and was properly filed and indexed by the recorder. Section 1248, Wilson's Rev. & Ann. St. 1903, provides:

"'The register of deeds shall, whenever an instrument shall be presented to him for record, immediately note on the instrument the year, month, day, hour, and minute of receiving the same, and the date of record of such instrument shall be from the date of filing. He shall then enter the same on the receiving book, making all the entries in the appropriate columns as herein provided, and shall as soon thereafter as practicable, record said instrument in the proper record, enter it upon the proper indexes, and over his signature and seal note the book and page on which said instrument is recorded.'

"Under a similar statute it has been held that the delay of the register of deeds in making the entry did not affect the record thereof, and that the party filing his conveyance for record is not responsible for the fault or delay of the register in failing to enter immediately such conveyance upon his reception record, or in delaying to actually record said mortgage. Poplin v. Mundell, 27 Kan. 138. If it is the duty of the register of deeds to do all this, it cannot reasonably be said that the mortgagee is required to exercise over the public officer any supervisory control. That his duty ceases as soon as he deposits a properly prepared instrument with the register of deeds seems to be settled by a long line of well-considered cases. It is a universal rule that omissions by a public officer in the mode of complying with forms prescribed to him as his duty are not permitted to affect the party. Castillero v. U. S., 2 Black. 17-97, 17 L. Ed. 360. To the same effect is C. M. Keys & Co. et al. v. First National Bank of Claremore et al., ante, p. 174, where other authorities on this point are collated."

The other case, more recent, is Dabney v. Hathaway, 51 Okla. 658, 152 Pac. 77, opinion by Brett, Commissioner. This last cited case involved constructive notice under a chattel mortgage. The evidence disclosed that the instrument was not indexed as a chattel mortgage, as the law requires, but was recorded by the register of deeds in a miscellaneous record kept in his office. The question involved was whether or not this failure to place a chattel mortgage of record as the statute directs affected the rights of the mortgagee who sought to recover the property from a third person claiming to be an innocent purchaser with no knowledge,

either actual or constructive, of the mortgage. The statute requires the mortgage to "be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged or any part thereof is at such time situated." In the body of the opinion the commissioner approves and reaffirms the principle announced in Covington v. Fisher, heretofore cited; that principle being that the negligence of the register of deeds or his mistake in failing to properly record or index the instrument cannot be attributed to the mortgagee, who, it is held, cannot be made to suffer by the laches of the recorder. This is the same principle that is laid down in the case of Covington et al. v. Fisher. The following is a portion of the language used by Commissioner Brett:

"And under this statute the mortgagee has performed his part when he has filed the instrument by depositing it in the office of the register of deeds. He has no supervision or control over the register of deeds, or his acts, and if the register of deeds, through negligence or mistake, fails to properly record or index the instrument, the mortgagee cannot be made to suffer by reason of his laches. Any other rule would make the mortgagee's rights dependent upon the diligence of another person, over whom he has no control, and would always leave him in doubt as to whether his rights would be protected. When the instrument is filed, it then becomes the duty of the register of deeds to properly record and index it."

And then the opinion cites and quotes a portion of the quotation from Covington v. Fisher, hereinabove quoted.

By these two opinions this court has become committed to an important rule of interpretation, and it would not now be right and equitable for this court at this late day to change such position, as it might be disposed to do if it were a question of first impression. We will not, therefore, review the merits of the two positions or the reasons therefor.

The principle adopted in these two opinions, and which we hold to be the rule in this state, seems to be succinctly stated in the following language, taken from 23 R. C. L. 27, section 90:

"Whether the grantee in an instrument, or a subsequent purchaser, shall suffer from the mistake or omission of the recorder in registering it or neglecting to register it, is determined by some courts by applying the rule that where a grantee has duly deposited his deed with the proper officer for record, he has performed his whole duty, and consequently the subsequent mistake or neglect of the recorder will not affect him, * * * and no duty rests on the grantee

to see that the recorder makes the record correctly. From the moment the instrument is duly filed with the recording officer, according to this view, it is notice of what it contains, and not of what the recording officer may make it show on the record. * * * This rule is especially applicable under statutes which provide that an instrument shall be operative as a record from the time it is filed for record. To hold otherwise under a statute of that kind would practically destroy the operation of the clause, making the instrument effective as notice as soon as it is deposited for record."

The language of section 1155, Rev. Laws 1910, reads as follows:

"Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, incumbrancers, or creditors."

The language of our statute on recordation seems to be the same as that of the statutes discussed in the provision of R. C. L. heretofore quoted.

The Kansas Supreme Court, interpreting a similar statute in the case of Lee v. Birmingham, 1 Pac. 73, opinion by Mr. Justice Brewer, uses the following language in the first and third paragraphs of the syllabus of the opinion:

"Where an instrument, shown to have been deposited in a public office, is claimed to have been lost or destroyed, the testimony of the custodian of such office, or some person who has himself searched in such office must be produced showing that after search he was unable to find the instrument, before secondary evidence of its contents is admissible."

"A purchaser of real estate who takes his deed to the office of the register of deeds and deposits it with him for record, discharges thereby his duty of notice to the public; and if, through the fault alone of the register, the deed is lost and not entered of record, such failure will not work to the prejudice of the title of such purchaser, even in favor of a subsequent purchaser without notice. * * *"

The Kansas Supreme Court also in the case of Zeiner v. Edgar Zinc Co., 99 Pac. 614, uses the following language:

"Plaintiff brought this action to cancel an oil and gas lease on lands which he purchased subject to the lease, relying on the terms of the lease as shown by the records in the office of the register of deeds. The lease was duly filed for record by the lessee immediately after its execution; but the register of deeds in copying it omitted by mistake two words which appeared in the original and which related to the terms of for-

feiture. Plaintiff proceeds upon the theory that the lessee must suffer any loss occasioned by the mistake of the register of deeds.

"There are two reasons why the plaintiff cannot recover. The statute expressly provides that instruments of writing affecting real estate, properly certified and duly filed for record, 'shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof,' and subsequent purchasers are deemed to have purchased with notice. This has been decided to mean exactly what it says (quoting authorities). The other reason is that the trial court found that plaintiff examined the records with an attorney, and it appears that the omitted words left the language meaningless, so that the plaintiff must be held to have had notice that the recorded copy was not correct and that something was omitted."

While the lease as recorded in the instant case was made to say in the record that the lease was in consideration of $250 per annum, yet the particulars that followed this statement, detailing how the consideration was to be paid, show that the payments were not intended to cover a consideration in excess of $250 for the entire term, or $50 per year for five years. The exact provisions of the lease as to the consideration and the manner of payment as shown by the record read as follows:

"That the consideration of this lease contract to be paid by the lessee to the lessor is $250.00 per annum, payable as follows, to wit:

"$25.00 cash in hand paid, receipt acknowledged, $25.00 on January 1, 1918, thereafter until the whole amount is paid and during the term of this contract."

The term of the contract was for five years, and the manner detailed as to the payment of a consideration could not be interpreted as showing a consideration in excess of $250 for the entire period.

A purchaser invoking the record as he does in this case, and applying the doctrine that he himself invokes and even if admitted to be controlling in the case, then he is bound by the entire record and what the record shows, and to say the least of it, the record showed the consideration to be $250 for the five-year period as plainly as it showed the other. At least, this is true to the extent of raising uncertainties sufficient to put him on guard and require inquiry as to the actual consideration. This rule is laid down in the quoted portion of the case of Zeiner v. Edgar Zinc Co., the last cited and quoted Kansas case.

It appears from this record that the lessee and his terre-tenants were in posses-

sion of this land, and notwithstanding the fact that there may have been a faulty recordation of this lease, the purchaser of land is held to take notice of whatever rights the one in possession of the land possesses. This rule has been laid down in Flesher v. Callahan et al., 32 Okla. 283, 122 Pac. 489, and also in a recent case by this court, Wilkerson et al. v. Stone et al., 82 Okla. 297, 200 Pac. 196, by Mr. Justice Pitchford.

There seems to be another principle involved in this case that was overlooked in the former opinion by this court, and that is to the effect that one purchasing land gets no better rights than those possessed by the grantor. This proposition is suggested by the attorneys for the defendant in error. We do not decide whether it properly applies in this case or not. The rule is stated in 24 Cyc. 926, as follows:

"The owner of leased property may sell it during the continuance of the lease, and he may assign the reversion without a transfer of the rent; but if there is no reservation, the grant conveys the lessor's interest in an unexpired lease. Where the lessee is in possession, the purchaser takes subject to the lease, although he has no actual knowledge thereof. * * * Generally the rights and liabilities existing between the grantee and the lessee are the same as those existing between the grantor and lessee, after the lessee is given notice of the transfer of the property."

This apparently applies, but we are deciding this upon the other grounds heretofore adduced, and which other grounds we hold to be decisive of the case, making it unnecessary for us to decide this last suggested proposition.

We think that the holding of the trial court was correct in the instant case, and that judgment should be affirmed, and the same is hereby affirmed.

PITCHFORD, V. C. J., and KANE, JOHNSON, McNEILL, KENNAMER, and NICHOLSON, JJ., concur. MILLER, J., dissenting. HARRISON, C. J., not participating.

On Rehearing.

PER CURIAM. There have been two opinions of this court in the above entitled and numbered cause. On December 13, 1921, the opinion of this court, by Mr. Justice Miller, reversed and remanded the cause, with instructions to the trial court to proceed further in accordance with the views therein expressed; on December 26th, thereafter, the defendants in error filed their petition for rehearing, which petition was granted by this court on January 10, 1922; thereafter,

on January 17, 1922, there was an opinion of this court by the then Mr. Justice Elting, affirming the judgment of the trial court; thereafter, on January 28, 1922, the plaintiff in error filed her petition for rehearing; and thereafter, on February 14, 1922, it was ordered by this court that the latter opinion be withdrawn and the original opinion reinstated; on February 20, 1922, a supplemental motion for rehearing was filed, and a response thereto filed on February 23, 1922: on March 17, 1922, a rehearing was granted and application for oral argument on rehearing was likewise granted, and the same was heard on December 12, 1922, and at that time the cause was submitted on such oral arguments and briefs of counsel.

We have carefully re-examined the record, as well as the opinions heretofore rendered, aforesaid, and the oral arguments and briefs of counsel have been fully considered, and we are clearly of the opinion that the opinion of this court by Mr. Justice Elting, rendered on January 17, 1922, should be adhered to and be filed as the opinion in the cause; and it is so ordered.